## Hall v. Commonwealth.

Sept. 24, 1940.

Ira D. Smith, Judge.

James A. Vinson and C. C. Molloy for appellant.

Hubert Meredith, Attorney General, and H. A. Federa, Assistant Attorney General, for appellee.

Opinion of the Court by Chief Justice Ratliff— Affirming.

Richard Hall has appealed from a judgment of the Lyon Circuit Court sentencing him to five years in the penitentiary under an indictment charging him with the offense of carnally knowing a female under the age of consent.

In his motion and grounds for a new trial, appellant assigns numerous alleged errors, but in brief of counsel only three of them are relied on for reversal of the judgment, viz., (a) because the verdict is against both the law and the evidence; (b) because the verdict of the jury, which reads as follows, "We the jury find the defendant guilty and fix his sentence at five years in prison with recommendation for probation," shows on its face that it was decided or agreed on in some manner other than fair expression of opinion by the jurors and that the jury or some member thereof had a reasonable doubt of defendant having been proven guilty; and (c) because of improper argument to the jury by the Commonwealth's Attorney. We will discuss these points in the order named.

(a) The substance of the evidence produced for the Commonwealth is that on Monday morning July 24, 1939, the prosecuting witness, Glenda Lewis, who was a great-niece of appellant, then fourteen years of age, left her home where she resided with her grandparents, on her way to school. After she had gone some distance and before reaching the schoolhouse, she stopped at a mailbox and appellant stepped out from behind some bushes and asked her where she was going, saying he was squirrel hunting. He had a shotgun in his hand. He asked her if she was going to school and she told him she was and he said he was going that way. It appears that this was on a side road and, just before they reached the main road, appellant stopped her and asked her "if she would," and she told him "no"—that she had to go on to school, and he then told her that she had to and to "come on" and that she had better not tell it. He put his arms around her and led her into the woods and laid her down on the ground and had intercourse with her twice while they were there. Appellant then started back towards his home and Glenda went on to school, arriving there at about 10:30 o'clock. Glenda

further testified that appellant had intercourse with her once about a year previous while on her way to school. In some manner not disclosed in the record, Glenda's uncle and grandfather had received information that she had not arrived at school and they went to the school to see about her, reaching there just after Glenda arrived. They suspected that appellant had mistreated Glenda and questioned her about him and took her to a doctor on Friday following for an examination, but no examination was made at that time. On her return home from the doctor's office she then disclosed that defendant had mistreated her. A warrant was procured from the office of the county judge charging appellant with rape and an examining trial held before the county judge of Lyon county on July 31st. Defendant offered no testimony and was held to the grand jury, which later returned the present indictment. However, on Monday July 31st, one week after the commission of the offense, the prosecuting witness was examined by two doctors, who filed a written report stating, in substance, that they had made a vaginal examination of her and found no evidence of recent trauma, but the hymen was torn but well healed, and the vagina and labis were otherwise normal and the vagina readily admitted a large-size vaginal speculum.

It is also shown in the evidence that in the spring of 1938, while the prosecuting witness was visiting her mother in Frankfort, Ky., appellant, who lived at Louisville, visited her mother's home in Frankfort while she was there and slipped a note into her hand. The note, as copied into the transcript of evidence, reads:

> "Honey Sweet: I still love you more and more. I came up here to see you, and I want you to come to my house before you go home. I can be with you then. I still love you just as I always have, and I want you, oh, so bad. Yours."

No one's signature appeared to the note, but according to the evidence of two or three witnesses the note appeared to be in the handwriting of appellant. He denied having written the note or having delivered it to the prosecuting witness.

Another witness testified that he saw appellant early in the morning near the mailbox in the locality where

the prosecuting witness said the offense was committed. It is also shown in the evidence that for some time appellant paid undue attentions to the prosecuting witness; that he would go into her room when she was alone and otherwise seek her company in a way that attracted the attention of those who observed his actions.

Appellant testified in his own behalf and denied that he was at or near the mailbox or in the vicinity mentioned by the prosecuting witness where the alleged offense was committed and denied that he saw her on that morning. Other witnesses were introduced in his behalf, but their evidence has no material bearing on appellant's guilt or innocence. The evidence presents a conflict which is a question for the jury.

It cannot be doubted that the positive evidence of the prosecuting witness and the corroborative circumstantial evidence and facts disclosed by other witnesses is sufficient to sustain the verdict. In fact, appellant does not seriously contend that the evidence is insufficient but relies chiefly upon grounds (b) and (c).

(b) It is next insisted that the jury's recommendation for probation rendered the verdict invalid, since it disclosed that the jury or some of them was not in agreement on the verdict of guilty. We know of no way of ascertaining the intentions of a jury except by its written verdict and, since the verdict plainly states that the jury agreed and found the defendant guilty and fixed his penalty at five years in prison, it is conclusive that the jury was in agreement. The recommendation for probation, according to the great weight of authority, if not unanimous, is no part of the verdict of the jury and such recommendation does not invalidate the verdict. When a verdict plainly states the finding of the jury and fixes the penalty in criminal cases, or the rights of the parties in civil cases, recommendations to the court pertaining to matters beyond the province of the jury and solely within the province of the court are mere surplusage. Appellant cites the case of Avant v. State, 88 Miss. 226, 40 So. 483, 117 Am. St. Rep. 737, wherein a verdict of guilty of murder "beg[ging] the mercy of the court" was held no verdict because there was an " 'apparent cloud' as to what the actual intent and finding of the jury is."

Whether or not a recommendation in a jury's ver-

dict "beg[ging] the mercy of the court," and one recommending parole under our statute, are of the same import, we do not decide, since if it be conceded that they are of similar import we think the Avant case, supra, is contrary to the great weight of authority. In the case of Knopp v. State, 49 Okl. Cr. 416, 295 P. 228, 229, where a jury recommended the minimum sentence, the court said: "While the verdict is informal, it is not illegal and was sufficient to authorize the court to pronounce judgment thereon."

Also in People v. Lamb, 67 Cal. App. 263, 227 P. 969, it is held that recommendations in the jury's verdict are no part of the verdict. It is our conclusion, therefore, that the recommendation for probation contained in the verdict is mere surplusage and does not render it invalid.

(c) It appears in the motion and grounds for a new trial and in brief of appellant, that W. N. Cummins and J. M. Smith were summoned as witnesses for the Commonwealth and appeared in Court. Cummins testified that the note referred to above was in the handwriting of appellant, but Mr. Smith was not introduced by the Commonwealth. One of defendant's counsel, in his argument, called the jury's attention to what had occurred in their presence and stated that the jury had the right to assume that Mr. Smith would not testify the same as Mr. Cummins or that the note introduced by the Commonwealth was in defendant's handwriting, and turned to the Commonwealth's Attorney and said: "John, why didn't you put Mr. Smith on the witness stand?" In response to the challenge of defense counsel the Commonwealth's Attorney, in his argument, said:

"Mr. J. M. Smith would have testified exactly the same as Mr. W. N. Cummins—that the note introduced by the Commonwealth was written by defendant, and that Mr. Smith was not introduced as a witness because he asked to be excused on account of his friendship for and business relations with members of both families."

In response to the remarks of defense counsel, it was entirely proper for the Commonwealth's Attorney to explain why he did not introduce Mr. Smith as a witness, but his statement relating to what Mr. Smith

would have testified, if he had been introduced, was improper and should have been omitted. But since appellant's counsel opened the question and challenged the Commonwealth's Attorney for an explanation, it is doubtful that this technical error would warrant a reversal of the judgment. This is particularly true in view of the abundance of probative and substantial evidence tending to prove appellant's guilt, aside from the remarks of the Commonwealth's Attorney. However, be that as it may, the alleged objectionable argument of the Commonwealth's Attorney is not incorporated in the bill of exceptions or otherwise officially before us. It appears only in the motion and grounds for a new trial and in brief of appellant. It has been consistently held by this court that to take advantage of improper argument of counsel before a jury, such argument must be set out in and made a part of the bill of exceptions, and since this was not done in the present case we are without authority to consider the alleged improper argument on its merits. Saylor v. Com., 57 S. W. 614, 22 Ky. Law Rep. 472; Frey v. Com., 169 Ky. 528, 184 S. W. 896; Bibb v. Com., 112 S. W. 401, 33 Ky. Law Rep. 726; Goins v. Com., 223 Ky. 211, 3 S. W. (2d) 631.

Finding no prejudicial error, the judgment is affirmed.